UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ASSUREDPARTNERS NORTHEAST, LLC,                  :
                                                 :
            Plaintiff,                           :
                                                 :     **COMPLAINT FOR INJUNCTIVE**
            -against-                            :     **RELIEF AND DAMAGES**
                                                 :
ADAM STONE and ALLIANT INSURANCE                 :     Index No. 20-cv-5564
SERVICES, INC.,                                  :
                                                 :
            Defendants.                          :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff AssuredPartners Northeast LLC ("Plaintiff" or "AssuredPartners"), by counsel,

for its Complaint for Injunctive Relief and Damages against Adam Stone ("Stone") and Alliant

Insurance Services, Inc. ("Alliant") (collectively, the "Defendants"), states as follows:

## NATURE OF ACTION

1.      Adam Stone has blatantly ignored his contractual obligations to AssuredPartners.

On two occasions, he signed a narrow non-solicit agreement promising not to solicit those clients

with whom he had material involvement in selling or servicing insurance products while employed

by AssuredPartners.  Within days of his resignation he did just that, though.  And he did so with

the help and encouragement of Alliant—a known bad actor in the industry.[1]

2.      Alliant is no stranger to this conduct.  In fact, in the last 24 months Alliant has been

sued more than a dozen times for encouraging producers like Stone to breach their non-solicit

obligations.  Alliant refuses to abide by industry norms unless compelled to do so by a court.

---

[1] *See, e.g.*, *Arthur J. Gallagher & Co., v. Alliant Insurance Services, Inc., and Stone Point Capital, LLC* (In the Court of Chancery of the State of Delaware) and *AssuredPartners of Washington, LLC, v. Mark Acarregui and Alliant Insurance Services, Inc.* (USDC, W.D. WA, 2:20-cv-00290).

AssuredPartners will not be yet another victim of Alliant and seeks injunctive relief and compensatory and punitive damages as a result.

## PARTIES, JURISDICTION AND VENUE

3.      AssuredPartners sells insurance for safety, risk mitigation, workers' compensation, employee benefits, and related types of products throughout the United States.

4.      The only member of AssuredPartners Northeast LLC is AssuredPartners Capital, Inc., which is organized and operating under the laws of Delaware, with its principal place of business in Lake Mary, Florida.  AssuredPartners is therefore a citizen of Delaware and Florida.

5.      Defendant Alliant Insurance Services, Inc. is a California corporation with its principal place of business in Newport Beach, California.  Alliant is therefore a citizen of California.  Alliant is an independent insurance company that sells commercial and personal-related types of insurance.  Alliant is a direct competitor of AssuredPartners.

6.      This Court has personal jurisdiction over Alliant because it conducts business within this District and because Alliant caused events to occur in this District out of which this Complaint arises.

7.      Defendant Adam Stone is a former employee of AssuredPartners and is currently employed by Alliant in substantially the same capacity that Stone worked for AssuredPartners. Stone is a citizen of New York who currently works for Alliant out of Alliant's office in Melville, New York.

8.      This Court has personal jurisdiction over Stone because Stone resides in this District, and because Stone caused events to occur in this District out of which this Complaint arises.

9.      This Court has subject matter jurisdiction over AssuredPartners' claims pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and because the amount in controversy, exclusive of interest and costs, while impossible to calculate with precision, exceeds $75,000.

10.     This Court also has subject matter jurisdiction over the claims of AssuredPartners pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the First Cause of Action alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*., and AssuredPartners' other claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to AssuredPartners' claims occurred in this District.

**Background**

12.     AssuredPartners is a leading provider of insurance products and services to businesses located in New York and throughout the nation.  AssuredPartners has an office in Melville, New York where Stone worked.

13.     The business of AssuredPartners primarily focuses on employee benefits, property and casualty, and executive and personal insurance products and services.

14.     AssuredPartners hires and trains salespersons, known as "Producers," to sell its insurance products and services to its clients.  AssuredPartners rigorously screens and trains its Producers to ensure that the Producers are qualified to represent and sell its products, have the proper tools to analyze and meet client needs, and can furnish AssuredPartners' clients with tailored insurance solutions and services that satisfy the clients' unique insurance needs.

15.    AssuredPartners expends substantial resources advertising, marketing, and promoting its insurance products and services. These expenditures include, among other things, marketing materials, marketing events, and on-and-off-site client events.

16.    The training that AssuredPartners provides, the Confidential Information belonging to AssuredPartners, and its substantial expenditures promoting its products and services enables Producers to develop and cultivate loyal client accounts and relationships on behalf of AssuredPartners. Producers solicit business for the Company, provide quotes and proposals to prospective clients, and, once policies are in place, provide day-to-day servicing as required by clients. In essence, Producers are the "face" of AssuredPartners to its current and future clients.

17.    The loyalty AssuredPartners' Producers generate using AssuredPartners' resources and training procures repeat business, including policy renewals, which provide AssuredPartners with its competitive advantage in the highly competitive insurance industry.

**Protection of AssuredPartners' Confidential Information**

18.    The business of AssuredPartners involves the collection, generation, use, and protection of "Confidential Information" (defined below), including, but not limited to, the identity of clients and prospective clients; the contact information for key decisionmakers; client insurance needs; vendors; insurance carriers; policy terms of existing clients; expiration/renewal dates; AssuredPartners' financial condition, including its marketing plans, pricing and business strategies and methods; and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners' insurance offerings and other products. All of this information is compiled and kept on AssuredPartners' servers and accessible only by employee laptops.

19.    AssuredPartners' Confidential Information is the product of years of accumulation and distillation of proprietary information. AssuredPartners has made a considerable investment in terms of hours and expense to accumulate, compile, and maintain this confidential information.

20.    AssuredPartners goes to great efforts to maintain the secrecy of its Confidential Information, including, but not limited to: limiting the disclosure and use of this information to those who have specific specialties and experience; educating Producers about the requirements and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks containing this information to those employees with specific specialties and experience; requiring the use of passwords to access the information; requiring Producers to execute written agreements that protect against the misuse and improper disclosure and post-employment retention of the Confidential Information, and engaging in post-employment efforts to ensure its Confidential Information is maintained by departing employees in confidence and not shared with competitors. This Confidential Information is not available to the public, is not shared with the public, and is competitively valuable to competitors of AssuredPartners.

21.    As a condition of employment, AssuredPartners' Producers execute a Restrictive Covenants Agreement under which the employee agrees that he or she "shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon the request of the Company, Employee shall immediately deliver to the Company all documents, materials, and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company."

### Adam Stone Enters Into an Agreement With AssuredPartners

22.    Adam Stone began employment with AssuredPartners in 2015 as part of an acquisition of another entity.  As part of that acquisition, Stone signed an Employment and Restrictive Covenants Agreement which contained non-solicitation, non-interference and confidentiality provisions.  Attached as **Exhibit A** is a true and correct copy of the Employment and Restrictive Covenants Agreement.

23.    Stone left AssuredPartners in 2017, but returned in December 2018.  At that time, Stone signed yet another agreement containing non-solicit, non-interference and confidentiality provisions.

24.    On December 1, 2018, Stone executed the Restrictive Covenants Agreement (New York) (the "Agreement").  Attached as **Exhibit B** to the Complaint is a true and correct copy of the Agreement.

25.    Stone's Agreement includes provisions relating to non-disclosure of confidential information, restrictions on solicitation of business on behalf of other insurance companies during the term of the Agreement, and restrictions on solicitation of or conducting business with AssuredPartners' clients for a period of two (2) years following the termination of the Agreement.

26.    With regard to non-disclosure of AssuredPartners' Confidential Information, the Agreement states in relevant part:

2.    **Confidential Information.**

(a)    For purposes of this Agreement, the term "Confidential Information" means all confidential, proprietary and/or non-public information, whether or not in a written or recorded form, concerning the business or affairs of the Company and/or its affiliates, subsidiaries, and parent companies and each of their respective successors and assigns (both individually and collectively as the context

may require, the "<u>Employer Group</u>"), including but not limited to, information concerning:

    (i)    the Employer Group's clients, prospective clients, acquisition targets, vendors, insurance brokers, vendors, insurance carriers, policy forms and information, policy types, rating information, premium amounts, expiration dates, information on risk characteristics, information concerning insurance markets for large or unusual risks and/or contracts or arrangements (including special terms and deals);

    (ii)    the Employer Group's financial condition, business costs, profits and losses, results of operations, marketing plans, business plans, operations, pricing, commissions, promotions, and business strategies and methods; and

    (iii)    the services and products offered by the Company to its clients or prospective clients, including, but not limited to, policy forms, rating information, expiration dates, renewal information, client preferences, client needs, information on risk characteristics, and information concerning insurance markets for large or unusual risks.

    (b)    Employee acknowledges and agrees that all Confidential Information is the sole and exclusive property of the Employer Group. Accordingly, both during and after employment with the Company (whether such separation from employment is voluntary or involuntary, or with or without cause), Employee shall not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive officer of the Company in writing. Upon separation of employment for any reason, or at any other time upon request of the Company, Employee shall immediately deliver to the Company all documents, materials and data (and copies thereof), in tangible, electronic, or intangible form, relating to the business of the Company.

(*See* Exhibit B ¶ 2.)

27.     With regard to the restrictive covenants relating to AssuredPartners' clients, the

Agreement states in relevant part as follows:

3.     **Non-Solicitation & Non-Interference**.

(a)     During Employee's employment with the Company, Employee shall not induce or attempt to induce, or refer to a third party the purpose of such third party inducing or attempting to induce, any person or entity to purchase an Insurance Product (as defined below) from any entity other than a member of the Employer Group. Furthermore, during the twenty-four (24) month period immediately following the date upon which Employee's employment ends with the Company (whether voluntary or involuntary or with or without cause) (the "Restricted Period"), Employee shall not directly or indirectly through another person or entity, (each, a "Restricted Activity"):

(i)     offer, sell, solicit, quote, place, provide, renew or service any insurance product or provide service to, or accept business from, any Restricted Client or anyone acting on behalf of, any Restricted Client;

* * *

(b)     Restricted Clients.  For purposes of this Agreement, "Restricted Client" means the following:

(i)     any client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason: (A) as to which Employee received commission compensation and/or fees; (B) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service offered by any person or entity within the Employer Group (each, an "Insurance Product"); or

* * *

8

(c)     Employee acknowledges and agrees that the definition of Restricted Clients is reasonable in scope and degree, is not overly broad, and, upon any enforcement of the Restrictive Covenants, will not preclude or prevent Employee from earning a living after the termination of Employee's employment with the Company.

(*See* Exhibit B ¶ 3.)

28.     With regard to remedies available to AssuredPartners for any breach of the above-referenced covenants, the Agreement states in relevant part as follows:

4.     **Remedies**.  In the event of the breach or a threatened breach by Employee of any of the obligations of <u>Sections 2</u> or <u>3</u>, (the "<u>Restrictive Covenants</u>"), the Company, in addition to other rights and remedies available to it, shall be entitled to injunctive relief and may apply to any court for specific performance, temporary, preliminary, and/or permanent injunctive relief, or other relief in order to enforce such obligations or prevent any breach of such obligations.  In addition, in the event of a breach by Employee of the obligations in Restrictive Covenants, the Restricted Period shall be tolled until such breach has been cured.  Employee further acknowledges and agrees that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

(*See* Exhibit B ¶ 4)

29.     The Agreement also states:

13.     **Modification; Severability**.  Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Company and Employee with any such modification to become a part hereof and treated as though originally set forth in this Agreement.  The Company and Employee further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the

Company and Employee as embodied herein to the maximum extent permitted by law. The Company and Employee expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

(*See* Exhibit B ¶ 13.)

30.     The Agreement further provides that:

If either the Company or Employee engages one or more attorneys to enforce any of the terms of this Agreement or otherwise protect it against any breach or threatened breach of this Agreement, whether or not a lawsuit or claim is actually filed, the non-prevailing party shall be responsible for and shall promptly pay all of the prevailing party's reasonable attorneys' fees, costs and expenses, and all other reasonable costs and expenses, in addition to any other legal or equitable relief to which the prevailing party may be entitled.

(*See* Exhibit B ¶ 18.)

### <u>Stone Begins to Work for AssuredPartners' Competitor and Violates the Agreement and the Law</u>

31.     During his employment with AssuredPartners, Stone serviced, solicited, and sold insurance products on behalf of AssuredPartners.

32.     On October 29, 2020, Stone resigned from AssuredPartners.

33.     On October 29, 2020, just prior to his departure, Stone reached out to a number of his contacts, advising them of his departure, directing them to his LinkedIn, and noting that there are "Certainly future opportunities to be had."

34.     Shortly thereafter, Stone began employment with Alliant. Stone is employed in substantially the same capacity as the position he held with AssuredPartners.

35.    Alliant is a direct competitor of AssuredPartners.  Like AssuredPartners, Alliant also provides insurance and brokerage services and sells the same types of insurance products to the same types of clients as AssuredPartners.

36.    In addition, Alliant is a major player in the insurance brokerage market, with revenues in excess of $1 billion and offices throughout the United States.

37.    Alliant was and is aware of the duties and obligations Stone owes AssuredPartners under the Agreement.  More specifically, Alliant knows that Stone is prohibited from soliciting AssuredPartners clients for two years after his AssuredPartners employment ended.

38.    Nevertheless, Alliant encouraged and instructed Stone to violate the Agreement by soliciting AssuredPartners clients as soon as Stone left AssuredPartners and joined Alliant as its Assistant Vice President – Producer in Alliant's Construction Services Group.

39.    Indeed, this is Alliant's "playbook." A review of recent legal filings reveals that Alliant is no stranger to allegations surrounding Alliant's hiring of a competitor's former employee and the employee then violating the duties and obligations he/she owes the former employer by soliciting clients.  Because of this underhanded business strategy, in the last two years alone Alliant has been sued no fewer than a dozen times in state and federal court for the very type of conduct alleged here:

- *Corp. Synergies Grp., LLC v. Alliant, et al.* (D.N.J.)
- *Insgroup v. Langley* (TX)
- *Aon Risk Servs. Cos., Inc. v. Alliant, et al.* (N.D. Ill.)
- *Marsh USA Inc. v. Alliant, et al.* (N.Y.)
- *Alper Servs. LLC v. Alliant*, et al. (Cook Co., IL)
- *Pitts Fennell & Assocs., LLC v. Alliant, et al.* (TX)
- *JLT Spec. Ins. Servs., Inc. v. Alliant, et al.* (NY)
- *USI SW, Inc. v. Alliant, et al.* (TX)
- *Mountain West Series v. Alliant, et al.* (DE)
- *HRO Benefit Advisors v. Cox* (TX)
- *Servco Insurance v. Soroka et al.*(W.D. WA)
- *AssuredPartners of Washington, et al v Acarregui et al.* (W.D. WA)

- *Arthur J. Gallagher v. Bacot* (TX)
- *Arthur J. Gallagher v. Tarantino, et al.* (N.D. CA)
- *Arthur J. Gallagher v Alliant, et al.* (DE)

40.    Upon information and belief, Stone is using AssuredPartners' Confidential Information – including confidential client contact information – to directly or indirectly solicit AssuredPartners' clients.    On November 9, 2020, Stone began soliciting his former AssuredPartners customers in direct violation of his Agreement:

From: Adam Stone <Adam.Stone@alliant.com>
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Sent: Mon, Nov 9, 2020 12:11 pm
Subject: New Contact Info - Adam Stone

Hi Heidi-

I hope you got enjoy this weekend's great weather! Just reaching out to let you know that I have taken a new position at Alliant in their Construction Services Group.

While I may have a new employer, my core mission has not changed; I remain committed to ensuring your needs are met with the highest level of excellence and attention. I would be honored for an opportunity to continue to work with The ▮▮▮▮▮ Team.

As the preferred Agency for over 75 of the top 400 ENR Contractors, Alliant has the necessary tools, resources, and leverage to align you with the most cost-effective and comprehensive insurance program. I am confident that not only can we reduce your costs, but we can have a positive impact on your bottom-line by helping to facilitate relationships with the likes of EW Howell, Skanska, and Icon Interiors.

Attached, is my new contact info; I hope that we can resume working together. If I can ever be of help, please do not hesitate reaching out.

Thank you,

**Adam Stone**
Assistant Vice President - Producer
Construction Services Group
Alliant Insurance Services, Inc.

## Irreparable Harm to AssuredPartners

41.    AssuredPartners' competitive advantage and success is based in large part upon the goodwill and the strength of its Producers' relationships with its clients, which Producers develop, foster and maintain using the training and Confidential Information that AssuredPartners provides to its Producers.

42.    Stone's actions have irreparably harmed and continue to harm AssuredPartners' legitimate business interests, its goodwill with its clients, and jeopardize its client relationships.

43.    Accordingly, AssuredPartners is suffering irreparable harm and immediate injunctive relief is necessary and appropriate to prevent further damage to AssuredPartners.  Injury

to AssuredPartners is probable and imminent because Stone has already demonstrated an intent to, and is likely to continue to, use AssuredPartners' Confidential Information in violation of the law and the Agreement.

## FIRST CAUSE OF ACTION
### Violation of the Defend Trade Secrets Act 18 U.S.C. § 1832 *et seq*.
### (Against All Defendants)

44. AssuredPartners re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

45. AssuredPartners' Confidential Information and expressly its compilations of information regarding the identity of clients and prospective clients, including the contact information for key decisionmakers; client insurance needs, vendors, insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods; and the services and products AssuredPartners offers, including insurance rating information, and pricing information for AssuredPartners' insurance offerings and other products, constitute trade secrets as defined by the DTSA. This information has independent economic value because it is not generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

46. AssuredPartners' Confidential Information is not generally available to its competitors. It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

47. AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

48.    AssuredPartners has taken reasonable and adequate precautions to protect its Confidential Information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and Producer duties, and requiring certain individuals to sign confidentiality agreements as a condition of employment.

49.    AssuredPartners' trade secrets are related to its products and services used in, or intended to be used in, interstate or foreign commerce.

50.    The Defendants are aware of the confidential and proprietary nature of AssuredPartners' Confidential Information, and of their duty not to use such information for their own benefit, or for the benefit of any person or entity other than AssuredPartners.

51.    The Defendants have willfully, wrongfully, and maliciously misappropriated AssuredPartners' Confidential Information by copying it, viewing it, and using it.

52.    The Defendants have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

53.    AssuredPartners has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless the Defendants, are enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets and confidential information.

54.    The conduct of the Defendants was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

55.    Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining the Defendants, from all acts of actual and threatened

misappropriation of the trade secrets of AssuredPartners; and an award of compensatory damages for actual losses caused by Defendants' misappropriation of trade secrets, attorneys' fees, an award of damages for unjust enrichment caused by Defendants' misappropriation of trade secrets, and an award of exemplary damages under 18 U.S.C. § 1836(b)(3).

**SECOND CAUSE OF ACTION**
**Violation of the New York Uniform Trade Secrets Act**
**(Against All Defendants)**

56.    AssuredPartners re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

57.    AssuredPartners is the rightful owner of its Confidential Information, including, but not limited to the multiple compilations of information collecting the identity of clients and prospective clients, the contact information of key decisionmakers, client insurance needs; vendors; insurance carriers, policy terms of existing clients, expiration/renewal dates, AssuredPartners' financial condition including its marketing plans, pricing and business strategies and methods, and the services and products AssuredPartners offers, including insurance rating information; and pricing information for AssuredPartners' insurance offerings and other products.

58.    Stone, on information and belief, has taken contact and other sensitive information, including customer preferences, expiration dates and pricing.

59.    AssuredPartners' Confidential Information is not generally available to AssuredPartners' competitors.  It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

60.    AssuredPartners' Confidential Information provides critical commercial and competitive advantages to AssuredPartners.

61.    AssuredPartners has taken reasonable and adequate precautions to protect its Confidential Information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and agent duties, and requiring certain individuals, including Stone to sign confidentiality agreements as a condition of employment.

62.    The Defendants are prohibited from misappropriating AssuredPartners' Confidential Information, which is a trade secret pursuant to the Uniform Trade Secret Act.

63.    The Defendants are aware of the confidential and proprietary nature of AssuredPartners' trade secrets, and of Stone's duty not to use such information for Stone's own benefit, or for the benefit of any person or entity other than AssuredPartners.

64.    The Defendants willfully, wrongfully, and maliciously misappropriated AssuredPartners' trade secrets by using Stone's knowledge of AssuredPartners' trade secrets relating to its clients to AssuredPartners' detriment.

65.    The Defendants have engaged in actual and threatened misappropriation of AssuredPartners' trade secrets.

66.    AssuredPartners has suffered and will continue to suffer irreparable harm,  including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless the Defendants are enjoined from continuing to benefit from any unlawful misappropriation of AssuredPartners' trade secrets.

67.    Unless restrained, the Defendants will continue to misappropriate AssuredPartners' trade secrets in violation of the Act.

68.    As a direct and proximate consequence of the conduct of the Defendants, AssuredPartners has been damaged in an amount to be proven at trial.

69.    The conduct of the Defendants was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

70.    Pursuant to the Act, AssuredPartners is entitled to preliminary and permanent injunctive relief, enjoining and restraining the Defendants from all acts of actual and threatened misappropriation of the trade secrets of AssuredPartners; and an award of damages against the Defendants to compensate AssuredPartners for all losses proximately caused by such acts of actual and threatened misappropriation.

**THIRD CAUSE OF ACTION**
**Breach of Contract**
**(Against Stone)**

71.    AssuredPartners re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

72.    On December 1, 2018, as a condition of employment with AssuredPartners, Stone entered into an Agreement with AssuredPartners which required ongoing mutual duties of the parties.

73.    The Agreement with Stone is valid and enforceable.

74.    AssuredPartners performed all of its obligations under its agreement with Stone.

75.    Under the Agreement, Stone promised that he would not solicit AssuredPartners' clients that he earned commissions on or had a material relationship with for two years after employment ended.

76.    Under the Agreement, Stone agreed not to disclose AssuredPartners' Confidential Information to anyone not authorized to receive or use the information, and not to retain any such information after employment ended.

77.    The post-termination covenants in the Agreement are reasonable in scope and duration given the renewal cycle in the industry, and are necessary to protect AssuredPartners' legitimate business interests in its Confidential Information, goodwill, and longstanding client relationships.

78.    Stone breached the Agreement and continues to breach the Agreement by:

    a.    retaining and using AssuredPartners' Confidential Information including the contact information for his former customers; and

    b.    copying and viewing AssuredPartners' Confidential Information and sharing it with others.

79.    As a direct and proximate consequence of Stone's conduct, AssuredPartners has incurred, and will continue to incur, significant damage.  Specifically, AssuredPartners suffered damage to its goodwill, reputation, and legitimate business interests in excess of $75,000.

80.    As described above, Stone has breached, and will continue to breach, contractual and legal obligations to AssuredPartners, and AssuredPartners has suffered, and will continue to suffer, irreparable harm and other damage as a result of Stone's actions in the absence of injunctive relief.

## FOURTH CAUSE OF ACTION
### Tortious Interference with Contract
### (Against All Defendants)

81.    AssuredPartners re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

82.    AssuredPartners possesses a valid and enforceable contractual relationship with Stone.

83.    AssuredPartners' contractual relationship with Stone requires him to, among other things, to "not use, or disclose to any third party, any Confidential Information for any reason other than as intended within the scope of Employee's employment or as approved by an executive

officer of the Company in writing," and to immediately return all AssuredPartners' Confidential Information in his possession at the termination of his employment.

84.    Alliant has knowledge of Stone's obligations to AssuredPartners.

85.    Despite such knowledge, Alliant encouraged and assisted Stone in duplicating AssuredPartners' Confidential Information without authorization, with the intention of retaining such copies following the conclusion of Stone's employment, in violation of the Agreement.

86.    AssuredPartners also possesses valid and enforceable contractual relationships with its clients.

87.    Stone and Alliant had knowledge of AssuredPartners' contracts with its clients and of AssuredPartners' expectancy that these clients would continue to utilize its products and services, including purchasing future insurance policies.

88.    By the acts described above, Stone and Alliant have intentionally interfered with AssuredPartners' contractual relationships with its clients.

89.    Stone and Alliant have had an improper motive and improper means to interfere with AssuredPartners' contractual relations without lawful justification.

90.    As a direct and proximate consequence of the tortious interference of Stone and Alliant with AssuredPartners' contracts and business relations, AssuredPartners has been and will continue to be irreparably damaged through the immeasurable loss of business, client relations, profits and goodwill for which there is no adequate remedy at law.

91.    AssuredPartners is entitled to preliminary and permanent injunctive relief against the Defendants enjoining and restraining them from further interfering with AssuredPartners' contractual and business relations.

92.    As a direct and proximate consequence of the Defendants' intentional and tortious conduct, AssuredPartners has been damaged in an amount to be proven at trial.

93.    The Defendants' tortious conduct was willful, malicious, and done in conscious disregard of AssuredPartners' rights, entitling AssuredPartners to punitive damages and attorney's fees and costs in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, AssuredPartners respectfully requests that this Court:

A.    Enter an injunction enjoining and restraining the Defendants, and all those acting in concert or participation with them, from using, possessing, disclosing or having access to any AssuredPartners' Confidential Information;

B.    Enter an order requiring the Defendants to return all AssuredPartners' Confidential Information to AssuredPartners;

C.    Enter an injunction enjoining and restraining Stone from offering, selling, soliciting, quoting, placing, providing, renewing or servicing any insurance product or service to, or on behalf of, any Restricted Client, for the 24-month period immediately preceding the end of Stone's employment.  Restricted Client is defined as (i) any client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason: (A) as to which Employee received commission compensation and/or fees; (B) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service offered by any person or entity within the Employer Group (each, an "Insurance Product");

D.    Enter judgment against the Defendants for compensatory damages in an amount to be determined at trial;

E.      Enter judgment against the Defendants for exemplary damages in an amount to be determined at trial;

F.      Award AssuredPartners the costs and expenses, including the reasonable attorneys' fees and costs, AssuredPartners incurs as a result of Stone's breach of the Agreement, misappropriation of trade secrets, and tortious interference with AssuredPartners' contractual relations; and

G.      Award AssuredPartners any such other relief as the Court may deem just and proper.

Dated:  New York, New York
        November 16, 2020

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s Aaron Warshaw
    Aaron Warshaw
599 Lexington Avenue, 17th Fl.
New York, New York 10022
(212) 492-2500
aaron.warshaw@ogletree.com

John G. Stretton
Two Stamford Plaza
281 Tresser Boulevard, Suite 602
Stamford, CT  06901
(203) 969-3100
john.stretton@ogletree.com

Todd J. Kaiser (*pro hac vice* pending)
111 Monument Circle, Suite 4600
Indianapolis, IN  46204
(317) 916-1300
todd.kaiser@ogletree.com

*Attorneys for Plaintiff*
    *AssuredPartners Northeast, LLC*

44970053.1